UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

GLENGARRY, L.L.C., and
ANGUS M. PEYTON,
*Co-Trustee of the Angus Eugene
Peyton Irrevocable Trust II*,

   Plaintiffs,

v.            CIVIL ACTION NO. 5:25-cv-00157

ANDREW NORMAND PEYTON MORIN and
WILLIAM BRISCOE MORIN and
LISA P. MORIN, *Co-Trustee of the Angus Eugene
Peyton Irrevocable Trust II*, and
DONALD R. MORIN, *Co-Trustee of the Angus
Eugene Peyton Irrevocable Trust II,*

   Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Plaintiff Glengarry, L.L.C.'s ("Glengarry") Motion to Remand [ECF 20], filed June 5, 2025. On June 18, 2025, Defendants Andrew Normand Peyton Morin, William Briscoe Morin, Lisa P. Morin, and Donald R. Morin (collectively "Defendants") responded [ECF 24] in opposition. Glengarry did not reply.

Also pending are (1) Plaintiff Angus M. Peyton's Motion for Summary Judgment [ECF 71], and (2) Defendants' Motion for Partial Summary Judgment [ECF 73], both filed December 22, 2025. The parties have each responded [ECF 75, 76] to the other's motion and replied [ECF 77, 78].

I.

This matter arises from the August 16, 2024, merger of Bonnie Brae, LLC, ("Bonnie Brae") with, and into, Glengarry. Prior to the merger, Bonnie Brae was a West Virginia

limited liability company composed of four members: Plaintiff Angus Peyton, Defendant Andrew Morin, Defendant William Morin, and the Angus Eugene Peyton Irrevocable Trust II ("the Trust"). [ECF 1-1]. Mr. Peyton, manager of Bonnie Brae, owned 62.5% of Bonnie Brae, while Andrew Morin and William Morin each owned 5%. [*Id*. at ¶¶ 12-13, 15]. The Trust owned the remaining 27.5% and consists of three trustees: Mr. Peyton, Lisa Morin (also a trust beneficiary), and Donald Morin. [*Id*. at ¶¶ 4, 6, 8, 14]. Mr. Peyton is a West Virginia resident. [*Id*. at ¶ 9]. Defendants are all Virginia residents, aside from William Morin, who is a resident of Maryland. [*Id*. at ¶¶ 2, 3, 5, 7]. Glengarry is a single-member, West Virginia limited liability company. [*Id*. at 1, 6]. Mr. Peyton is Glengarry's sole member. [*Id*. at 6 ¶ 2].

On June 25, 2024, Mr. Peyton provided Defendants with a "Notice of Special Meeting," regarding the proposed merger of Bonnie Brae into Glengarry. [*Id*. at ¶ 16]. The meeting was scheduled for July 2, 2024, to allow a vote on the merger. [*Id*.]. Mr. Peyton also provided Defendants with a draft "Plan of Merger." [*Id*. at ¶ 17]. Under the Plan, Glengarry was to acquire the entirety of Bonnie Brae. [*Id*. at ¶ 18]. Mr. Peyton's ownership interests in Bonnie Brae were to be converted to ownership interests in Glengarry, while Defendants' ownership interests were to be cancelled and converted to cash. [*Id*. at ¶¶ 19-21]. Specifically, the Plan called for payment of (1) $77,150 to both Andrew Morin and William Morin for their 5% ownership interest in Bonnie Brae, and (2) $424,325 to the Trust for its 27.5% ownership interest. [*Id*. at ¶¶ 20, 21]. These valuations were based on "a real property appraisal from Goldman Associates, Inc.[,] and a valuation of . . . [Bonnie Brae's] units from John W. Stroud, a certified valuation analyst (CVA)[,]" both obtained by Glengarry. [*Id*. at ¶ 22]. All payments were to occur within sixty (60) days of the filing of the Articles of Merger. [*Id*. at 15].

2

Following a brief postponement, on August 16, 2024, the meeting was held, where a vote was taken on the merger and its supporting Plan. [*Id*. at ¶¶ 23, 25]. Mr. Peyton was the only member of Bonnie Brae to vote in favor of the merger.[1] [*Id*. at ¶ 26]. Due to Mr. Peyton's 62.5% majority interest in Bonnie Brae, however, his vote trumped that of the remaining members, whose interests totaled 37.5%. [*Id*. at ¶¶ 26-28]. The merger and Plan were thus approved. [*Id*. at ¶ 29]. On August 21, 2024, Articles of Merger of Bonnie Brae with and into Glengarry [ECF 1-1 at 28] were filed with the West Virginia Secretary of State. [*Id*. at ¶ 33]. According to the Complaint, given their dissent, Defendants "have refused to accept the amount offered to them under the Plan of Merger." [*Id*. at 5 ¶ 35]. Defendants, however, maintain the "cashout" payments due by October 21, 2024, were never -- and have never been -- tendered to them by Mr. Peyton or Glengarry as required under the Plan. [ECF 74 at 7].

On December 19, 2024, Glengarry instituted this action in the Circuit Court of Greenbrier County. [ECF 1-1 at 4]. Glengarry seeks (1) a declaration of "the fair value of the units of Bonnie Brae . . . owned by Defendants . . . as of August 15, 2024," (2) a declaration "that Glengarry and its sole member, [Mr.] Peyton, have exercised reasonable care, skill, and caution in handling their duties in connection with the merger of Bonnie Brae into Glengarry," and (3) an Order directing Defendants "to accept the fair value" of their interests in Bonnie Brae. [*Id*. at 9 ¶¶ 1-4]. Glengarry also seeks recovery of its attorney fees and costs incurred in connection with these proceedings. [*Id*. at 9 ¶ 5].

---

[1] Mr. Peyton also voted in favor of the merger in his capacity as co-trustee of the Trust, but because his two co-trustees voted against the merger, the Trust's ultimate vote was cast in the negative. [*Id*. at 4 ¶ 28].

3

On March 11, 2025, the matter was removed. Defendants subsequently answered the Complaint and asserted the following counterclaims[2] against Mr. Peyton: (1) Violation of West Virginia Code § 31B-4-409 – Self Dealing (Count I), (2) Violation of West Virginia Code § 31B-4-409 – Mismanagement of Bonnie Brae Assets (Count II), (3) Violation of West Virginia Code § 44D-8-801-802 (Count III), and (4) Declaratory Judgment Relief (Count IV). [ECF 3 at ¶¶ 11-27].

As to Count I, Defendants assert Mr. Peyton breached his duties of care and loyalty to the minority members of Bonnie Brae by: (1) "taking a 40-foot-wide easement across Bonnie Brae's real property without compensating Bonnie Brae for said easement and likely diminishing the value of the Bonnie Brae real property[,]" (2) "making payments to himself from Bonnie Brae funds in the approximate amount of $400,000.00, without documenting the purpose for or providing receipts for such payments[,]" (3) "transferring five plus acres of real property from Bonnie Brae to himself for the purpose of creating utility easements over the objection of the minority members of Bonnie Brae without compensating the minority members for their share of the sales price[,]" (4) "refusing to give a reciprocal easement through his and Glengarry's property to Bonnie Brae for utility easements to match the easements taken by him when the five plus acres of Bonnie Brae real property was transferred[,]" and (5) voting in favor of the merger of Bonnie Brae into Glengarry when he was the sole member of Glengarry." [*Id*. at ¶¶ 15a. – e.].

Respecting Count II, Defendants assert Mr. Peyton breached his duties of care and loyalty, "as the financial advisor on a certain Bonnie Brae account at Scott & Stringfellow, [by] failing to invest the funds in that account properly which failure has resulted in losses of

---

[2] As explained in more detail *infra*, Defendants' counterclaims against Mr. Peyton were initially asserted as crossclaims given Mr. Peyton's prior designation as a Defendant in this action. Inasmuch as Mr. Peyton has since been realigned as a Plaintiff, the crossclaims will be referenced as counterclaims.

4

approximately $200,000.00." [*Id*. at ¶ 18]. As to Count III, Defendants assert Mr. Peyton, as a co-trustee of the Trust, "breached his duties to administer the Trust solely in the interests of the beneficiaries of the Trust" by voting in favor of the merger. [*Id*. at ¶ 25]. Finally, respecting the asserted declaratory relief in Count IV, Defendants request should the Court find the merger of Bonnie Brae and Glengarry proper, "the Court also declare that any debts, liabilities, responsibilities, and obligations of Bonnie Brae be assumed by Glengarry." [*Id*. at ¶ 27]. As relief, Defendants seek a finding that the merger was invalid, Mr. Peyton has engaged in acts of self-dealing, Mr. Peyton has mismanaged Bonnie Brae assets, and Mr. Peyton has failed to properly administer the Trust. [*Id*. at 11-12]. They also seek attorney fees and costs and prejudgment interest. [*Id*. at 12].

On June 5, 2025, Glengarry moved for remand, primarily contending diversity jurisdiction was lacking due to Mr. Peyton -- initially named as a Defendant -- and Glengarry's shared West Virginia citizenship. [*See* ECF 21 at 2]. Defendants Andrew Morin, William Morin, Lisa Morin, and Donald Morin challenged the remand based on their assertion that Mr. Peyton's interests in the outcome of the litigation were identical to Glengarry. [*See, e.g.*, ECF 23]. They thus maintained Mr. Peyton should be realigned as a plaintiff, at which point complete diversity would be present. [*Id*.]. On August 11, 2025, the parties submitted an Agreed Order Realigning Parties [ECF 42], stipulating to the realignment of Mr. Peyton as a plaintiff. The proposal was adopted by the Court the following day. [ECF 43].

On August 21, 2025, the parties were directed to respond to the impact, if any, of Mr. Peyton's realignment as Plaintiff on Glengarry's Motion for Remand. [ECF 47]. While Defendants maintain the realignment dooms Glengarry's remand request, Plaintiffs, -- albeit indistinctly -- assert otherwise. [*See* ECF 52]. Plaintiffs concede Mr. Peyton's realignment

5

"renders moot the argument that [his] status as a West Virginia resident is determinative on the question of diversity jurisdiction" and "recognize that realign[ment] . . . may result in the Court's denial of the . . . Motion to Remand." [*Id*. at 1-2]. Nonetheless, they contend "it would be appropriate for the Court to address the outstanding question of whether or not the domicile/citizenship of . . . the Trust . . . has an effect on the question of diversity jurisdiction." [*Id*. at 2]. Simply put, Plaintiffs appear to contend because the Trust is a West Virginia trust -- and should the Court conclude its citizenship is determined by the state in which it was organized -- diversity would be lacking as Mr. Peyton and Glengarry are likewise West Virginia citizens. [*Id*. (asserting "the Trust is a West Virginia trust" inasmuch as the Trustees annually "file a West Virginia Fiduciary Income Tax Return" and "Article VIII(A) of the Trust provides . . . [it] 'shall be governed by and construed according to the laws of West Virginia.'")].

On December 22, 2025, both Mr. Peyton and Defendants moved for summary judgment. Mr. Peyton seeks summary judgment on all four of Defendants' counterclaims, while Defendants seek partial summary judgment on Plaintiffs' request for declaratory relief. Respecting Mr. Peyton's Motion, he asserts summary judgment is warranted on all counterclaims inasmuch as Defendants (1) cannot prove damages as to their Count I self-dealing and Count III breach of fiduciary duty claims inasmuch as any purported damages suffered were to Bonnie Brae, not Defendants, (2) possessed knowledge of the asserted breach of fiduciary duty in 2022, rendering Count II in violation of the two-year statute of limitations, and (3) agree "Glengarry would, as a matter of law, assume the debts, liabilities, responsibilities, and obligations of Bonnie Brae," thus mooting the declaratory relief asserted in Count IV. [ECF 72 at 2-3]. Mr. Peyton further asserts that, even assuming Defendants have suffered damages, they have failed to designate an expert to quantify the same. [*Id*. at 9].

Defendants contest these assertions. Respecting damages, Defendants acknowledge the harm suffered was to Bonnie Brae but maintain as members of the company and/or beneficiaries of the Trust, they "are entitled to their percentage of the damages suffered by Bonnie Brae." [ECF 76 at 6]. They also contend an expert is not necessary to divide their asserted damages by their individual ownership interests in Bonnie Brae (*e.g.*, 5% or 27.5% of the $88,200 purchase for the easement and five-acres of land at issue in Count I). Defendants further reject Mr. Peyton's contention that their Count II claim is barred by the two-year statute of limitations. Specifically, they assert, at the very least, a dispute of fact exists as to when Defendants "should have discovered [Mr.] Peyton's alleged mismanagement of the Bonnie Brae investment account, particularly in light of his plea of ignorance about that account in general[.]" [ECF 76 at 11]. Lastly, Defendants maintain their requested declaratory relief is not moot given the ongoing dispute as to the validity of the merger.

Turning to Defendants' Motion for Partial Summary Judgment, they assert summary judgment is warranted on Plaintiffs' requested declaratory relief given their position that the merger of Bonnie Brae into Glengarry is invalid. Specifically, Defendants contend the merger lacks validity inasmuch as (1) the merger was not unanimously approved by all of Bonnie Brae's members as required under West Virginia law, (2) the cashout payments required under the Plan of Merger were never tendered, and (3) Plaintiffs lack the funds necessary to satisfy the cashout payments due. [ECF 74 at 2]. Plaintiffs disagree. They maintain (1) unanimous approval was unnecessary given that Bonnie Brae's Operating Agreement permits voting in accordance with ownership percentage, (2) cashout payments have not been tendered due to Defendants' refusal to accept the same, and (3) Mr. Peyton has a "number of ways" to fund the payments. [ECF 75 at 10].

7

## II.

### A. *Glengarry's Motion to Remand*

Title 28 U.S.C. § 1441 authorizes removal jurisdiction and provides pertinently as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 197 (4th Cir. 2022). Pursuant to 28 U.S.C. § 1332, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1); *see Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 495 (4th Cir. 2024) (describing the "statutory font of diversity jurisdiction" under § 1332(a)(1)); *Elliott v. Am. States Inc. Co.*, 883 F.3d 384, 394 (4th Cir. 2018).

### B. *Analysis*

As noted above, Plaintiffs appear to assert the Trust's citizenship should be assessed by its state of incorporation, namely, West Virginia, at which point diversity would be lacking given Plaintiffs' shared citizenship. Plaintiffs' contention is meritless. Plaintiffs instituted this action against the individual trustees Lisa and Donald Morin, not the Trust itself. [ECF 1-1 at ¶¶ 1-9]. There is thus no need to assess the Trust's citizenship. Indeed, the Supreme Court has made clear "when a trustee files a lawsuit or is sued in her own name, [the trustee's] citizenship is all that matters for diversity purposes." *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016) (citing *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 462-66 (1980)); *see also*

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, 822 F.3d 739, 749 (4th Cir. 2016). Inasmuch as Defendants Lisa and Donald Morin are citizens of Virginia, complete diversity is present.

Second, to the extent Plaintiffs assert the Trust is the "real party in interest," that contention is equally meritless. The Supreme Court has recognized "'a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'" *Zoroastrian Center*, 822 F.3d at 748. Nowhere do Plaintiffs contest that Defendants Lisa and Donald Morin possess such customary powers as trustees. Moreover, the merger vote, as well as the Trust Agreement, appear to demonstrate as much. [*See, e.g.*, ECF 73-1 at 4 (designating the powers of the trustees, including, *inter alia*, "[t]o hold and retain all or any property received from any source . . . [t]o sell or otherwise dispose of trust assets. . .[t]o prosecute or defend any action for the protection of the trust, the Trustee in the performance of the Trustee's duties, or both, and to pay, contest, or settle any claim by or against the trust of the Trustee in the performance of the Trustee's duties.")]. There is thus no basis for remand.

### III.

A.     ***Defendants' and Mr. Peyton's Motions for Summary Judgment***

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings."

9

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

**B.     Analysis**

Upon review of the parties' assertions as outlined above and the entirety of the evidentiary record, it is apparent disputes of material fact are extant respecting the validity of the merger and Defendants' counterclaims against Mr. Peyton, rendering summary judgment inappropriate for either party. Accordingly, any existing claims of equity will be tried by bench trial, with the assistance of an advisory jury, while any existing claims at law will proceed to a trial by jury.

**IV.**

Based on the foregoing discussion, Glengarry's Motion to Remand [**ECF 20**], Mr. Peyton's Motion for Summary Judgment [**ECF 71**], and Defendants' Motion for Partial Summary Judgment [**ECF 73**] are **DENIED**.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: February 24, 2026

Frank W. Volk
Chief United States District Judge

11